**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

PLATYPUS MARINE, INC., a Washington )
corporation, )
                                     )
                        Plaintiff, )
      vs. )
                                       )
GLACIER GUIDES, INC., an Alaska Corporation, )
*in personam*, ALASKA LEGACY, LLC, *in personam*, )
M/Y ALASKAN GRANDEUR, O.N. 1121333, her )
engines, tackles, hull, machinery, and gear, *in rem*, )
                                       ) No. 1:22-cv-0006-HRH
                         Defendants. )
_____ )

### O R D E R

Motion for Summary Judgment;
Motion for Partial Summary Judgment

        Plaintiff Platypus Marine, Inc., moves for summary judgment against defendant

Glacier Guides, Inc.[1]  This motion is opposed by defendants Glacier Guides, Alaska

Legacy, LLC, and M/Y ALASKAN GRANDEUR, O.N. 1121333.[2]  Defendants also

cross-move for partial summary judgment.[3]  Defendants' cross-motion is opposed.[4]  Oral

argument has been requested and has been heard.[5]

_____

      [1]Docket No. 48.

      [2]Docket No. 53.

      [3]Docket No. 56.

      [4]Docket No. 58.

      [5]See Transcript of Motion Hearing (Nov. 1, 2023), Docket No. 73.

ORDER – Motion for Summary Judgment;
Motion for Partial Summary Judgment                                                - 1 -

<u>Facts</u>

Zach and Alisha Decker "are the principals, owners, and operators" of Glacier Guides and Alaska Legacy.[6] Glacier Guides "specializes in yacht-based charter guided hunting and fishing expeditions, whale watching, and adventure cruises into Glacier Bay National Park."[7] Alaska Legacy owns the ALASKAN GRANDEUR, "on which Glacier Guides operates its business."[8]

"Glacier Guides, Inc. ha[d] a significant ongoing business relationship with Platypus providing regular vessel repair/renovation services for the ALASKAN GRANDEUR for several years."[9] More specifically, Zach Decker avers that plaintiff has "been servicing the ALASKAN GRANDEUR since 2005."[10] Zach Decker further avers that he and Alisha have known Judd Linnabary, "[t]he owner of Platypus" for years and that Linnabary "is very familiar with the business of Glacier Guides, and is aware that [it] is wholly dependent upon and centered around the charting of the ALASKAN GRANDEUR."[11]

Zach Decker avers that "[i]n in the fall of 2021 I arranged for Platypus to perform maintenance work on the Vessel[.]"[12] Zach Decker avers that "Platypus was the only boat yard we could take our Vessel to ... because they owed us substantial warranty work from

---

[6]Declaration of Zachariah Decker [etc.] at 2, ¶ 1, Docket No. 55.

[7]<u>Id.</u> at 2, ¶ 2.

[8]<u>Id.</u> at 2, ¶ 3.

[9]Declaration of Chris Feffer at 1, ¶ 3, Exhibit A, Declaration of Donald K. McLean, Docket No. 49.

[10]Zach Decker Declaration at 2, ¶ 4, Docket No. 55.

[11]<u>Id.</u>

[12]<u>Id.</u> at 2, ¶ 5.

our [previous] haul-out with them."[13]  The ALASKAN GRANDEUR was to be delivered to plaintiff on December 3, 2021, and Zach Decker avers that plaintiff "assured me that work would be completed by mid-February 2022[.]"[14]

On December 3, 2021, Zach Decker, as owner of the ALASKAN GRANDEUR, entered into a vessel repair contract with plaintiff.[15]  Zach Decker avers that the form contract was signed "after the ALASKAN GRANDEUR had been hauled out of the water in the Platypus yard."[16]  He also avers that he "had no opportunity whatsoever to negotiate [the] Terms and Conditions" of the contract and that he "had to take it or leave it."[17]

The form contract provided that

> all labor supplied by Platypus shall be invoiced with straight time, overtime, weekend, and holiday rates as set forth in the Schedule of Rates and Charges and all materials, parts and equipment ordered by Platypus ... shall be invoiced at the price actually paid by Platypus plus twenty percent...."[[18]]

The contract further provided that "Platypus shall invoice Customer every week, with payment due fifteen (15) days from date of invoice and any remaining balance shall become due at redelivery of the Vessel to Customer."[19]  The contract also provided that the "[c]ustomer may at any time request additions to, deletions from, adjustments of, or

---

[13]Id. at 6, ¶ 22.

[14]Id. at 2-3, ¶ 6.

[15]Exhibit 3, 30(b)(6) Deposition upon Oral Examination of Alaska Legacy, LLC Zachariah Decker at 65:22-25 ("Zach Decker Deposition"), Exhibit B at 15-18; McLean Declaration, Docket No. 49.

[16]Zach Decker Declaration at 3, ¶ 7, Docket No. 55.

[17]Id. at 6, ¶ 22.

[18]Exhibit 3, Zach Decker Deposition, Exhibit B at 15; McLean Declaration, Docket No. 49.

[19]Id.

other changes in the work description....  Although these changes may be oral, [c]ustomer shall execute a written change order or otherwise agree by e-mail if requested by Platypus."[20]  The parties agree that this "form contract ... provides that work is to be done on a time and material basis unless the parties agree otherwise."[21]

The contract also contained a section entitled "Warranty, Limitation of Liability, and Warranty Claims[.]"[22]  This section provided a limited warranty for work that is defective or deficient and provided that plaintiff is to have a "reasonable opportunity to repair/replace/cure" any such work.[23]  Section 12(A)(7) provided that plaintiff's "maximum liability pursuant to the warranty set forth herein shall not exceed, in the aggregate, the lesser sum of $100,000 or the value of the work performed by [plaintiff] under this Agreement."[24]  Section 12(A)(9) provided that plaintiff's "maximum liability to Customer for all causes of action, sounding in contract or tort, is $100,000, even if the damage was caused by the sole negligence or fault of" plaintiff.[25]  Section 12(B) provided that "in no event shall Platypus be liable with respect to and Customer specifically waives ... any defect in workmanship or materials that was open and evident and/or could have been discovered during the course of work or at the time of redelivery[.]"[26]  Section 12(C) provided that the limited warranty "shall be Customer's sole and exclusive remedy

---

[20]Id. at 16.

[21]Feffer Declaration at 1, ¶ 4, Exhibit A; Zach Decker Deposition at 65:22-25, Exhibit B at 5; McLean Declaration, Docket No. 49.

[22]Exhibit 3, Zach Decker Deposition, Exhibit B at 16; McLean Declaration, Docket No. 49.

[23]Id. at 16-17.

[24]Id. at 17.

[25]Id.

[26]Id.

ORDER – Motion for Summary Judgment;
Motion for Partial Summary Judgment                                                    - 4 -

against" plaintiff and "in no event shall [plaintiff] be liable to Customer for work performed on any other basis or under any other theory, including, but not limited to, actions based on negligence or strict liability[.]"[27]  Finally, the contract provided that

> [o]ther than provided in paragraph 10, neither party shall be responsible for any special or consequential damages whatsoever, including without limitation any claim for extra expense, loss of earnings, loss of profits, loss of use and business interruption, delay damages, whether resulting from negligence, breach of this agreement or otherwise, even if the possibility of such damages may have been foreseeable.[[28]]

Zach Decker avers that at the time of delivery of the ALASKAN GRANDEUR to plaintiff, he and Nick Burgett, plaintiff's project manager, "conducted a walk-th[rough] of the Vessel in order to create a scope of work to be performed" and that as a result of this walk-through, plaintiff "generated a 'Work Plan' consisting of 13 customer work orders which describe[d] the work to be performed, the method by which the work would be billed, and the cost of the work."[29]  The estimated cost of the work, excluding the work that was to billed on a time and material basis, was approximately $277,348.

Zach Decker avers that "[b]y the end of March" 2022, plaintiff "was significantly behind schedule" and the Deckers "were growing increasingly fearful that the ALASKAN GRANDEUR would not be re-delivered in time to outfit and sail to Alaska to meet our charter deadlines."[30]  Zach Decker avers that he advised plaintiff that the

---

[27]Id.

[28]Id. at 18.

[29]Zach Decker Declaration at 3, ¶ 8, Docket No. 55.

[30]Zach Decker Declaration at 4, ¶ 16, Docket No. 55.

ORDER – Motion for Summary Judgment;
Motion for Partial Summary Judgment                                                    - 5 -

ALASKAN GRANDEUR had to launch by April 4, 2022, at the latest and that Chris Feffer, plaintiff's president, told him that plaintiff could meet that deadline.[31]

On March 31, 2022, plaintiff issued a final invoice for $292,253.74.[32] Zach Decker avers that he received this invoice on April 1, 2022, and that it represented "a total invoiced price over the entire course of work of $492,253.75[,]" which was "more than $168,000.00 over any amount I had agreed to pay[.]"[33] Zach Decker avers that he "was shocked to receive this undiscussed massive last minute invoice, and I immediately requested a meeting with Mr. Linnabary and Mr. Feffer to dispute these charges."[34]

On April 4, 2022, Feffer, Linnabary, Burgett, and the Deckers "met to discuss the final billing."[35] Zach Decker avers that he and Alisha "came prepared with an itemized list of charges we disputed," but that "Linnabary and Feffer refused to discuss the overages on those terms. They would only speak in generalities, and would not address the specific discrepancies on the bill."[36] Zach Decker avers that "[t]he meeting concluded with Linnabary asserting that he would discuss the issue with Feffer and Burgett and get back with us promptly."[37]

---

[31]Id.

[32]Exhibit 1, Feffer Declaration, Exhibit A, McLean Declaration, Docket No. 49.

[33]Zach Decker Declaration at 4, ¶ 17, Docket No. 55.

[34]Id. at 5, ¶ 18.

[35]Feffer Declaration at 2, ¶ 5, Exhibit A, McLean Declaration, Docket No. 49.

[36]Zach Decker Declaration at 5, ¶ 18, Docket No. 55.

[37]Id.

ORDER – Motion for Summary Judgment;
Motion for Partial Summary Judgment                                              - 6 -

Plaintiff decided to "deduct[] $15,000 from the" amount still owing, for a new total due of $272,253.74.[38]  Burgett then texted Zach Decker to tell him that he "should see our updated statement with the discount applied any minute."[39]  After viewing the updated invoice, Zach Decker responded that "[w]e are on r way over that won't work."[40]  Burgett replied that he would be at lunch until 12:30.[41]  Zach Decker testified that he then had a phone conversation with Burgett who said that "Chris and Jud were no longer willing to discuss" the bill "and that, if wanted our boat launched, we had to pay the bill...."[42]  After the phone conversation, Zach Decker texted Burgett that "I guess you can come pick up the check[.]"[43]

Burgett subsequently picked up two checks from the Deckers.  Both checks were dated April 4, 2022, and were signed by Alisha Decker.[44]  Check No. 756 was for $104,242.56; and Check No. 757 was for $168,011.18.[45]  In the memo field of each check, Alisha Decker had written:  "Platypus Invoice AGR003-16."[46]  Alisha Decker testified that the amount of Check No. 757 was "a quick guesstimate calculation" of

---

[38]Exhibit 1, Feffer Declaration, Exhibit A, McLean Declaration, Docket No. 49.

[39]Exhibit 8, Zach Decker Deposition, Exhibit B at 35, McLean Declaration, Docket No. 49.

[40]Id.

[41]Id.

[42]Zach Decker Deposition at 115:6-8, Exhibit B at 11, McLean Declaration, Docket No. 49.

[43]Exhibit 8, Zach Decker Declaration, Exhibit B at 35, McLean Declaration, Docket No. 49.

[44]Exhibit 9, Zach Decker Declaration, Exhibit B at 36, McLean Declaration, Docket No. 49.

[45]Id.

[46]Id.

"items that were grossly over what was agreed to and signed for" and that when she wrote that check, Glacier Guides "intended to put a stop payment on it as soon as the boat left Platypus[.]"[47] Zach Decker also testified that it was Glacier Guides' "intention to stop payment on Check No. 757 at the time it was written.[48] Zach Decker testified that "[t]he intention was to get the vessel in the water and that we could then have a discussion, as we felt that the vessel was being held hostage by Platypus, and [we] were already extremely late returning to Alaska[.]"[49]

When plaintiff attempted to cash the checks, it discovered that there was a stop payment order on Check No. 757, which was for $168,011.18. On April 11, 2022, plaintiff gave Glacier Guides notice that Check No. 757 had "not been accepted for payment by Zions Bank, which is the drawee bank designated on your check."[50] Plaintiff advised Glacier Guides that if it did not make payment within fifteen days, it could be liable for collection costs, interest, and a $300 penalty.[51]

On April 12, 2022, plaintiff commenced this action. In its second amended verified complaint, plaintiff asserts three causes of action. In its first cause of action, plaintiff asserts "a maritime lien against the Vessel for the necessaries provided[.]"[52] In its second cause of action, plaintiff asserts a breach of contract claim against Alaska Legacy. In its

---

[47]30(b)(6) Deposition upon Oral Examination of Glacier Guides, Inc. Alisha Decker at 38:17-22, Exhibit C, McLean Declaration, Docket No. 49.

[48]Zach Decker Deposition at 121:7-10, Exhibit B, McLean Declaration, Docket No. 49.

[49]Id. at 121:2-6.

[50]Exhibit D at 2, McLean Declaration, Docket No. 49.

[51]Id.

[52]Second Amended Verified Complaint at 3, ¶ 17, Docket No. 18.

ORDER – Motion for Summary Judgment;
Motion for Partial Summary Judgment                                          - 8 -

third cause of action, plaintiff asserts an enforcement of instrument claim under RCW 62A.3-515 against Glacier Guides.

On July 21, 2022, defendants answered plaintiff's second amended verified complaint and filed a counterclaim.[53] Defendants assert a counterclaim for breach of contract/breach of warranty. The fairly stated value of defendants' counterclaim has been determined to be $224,810.00.[54]

On August 19 and 20, 2022, Ron Reisner, a marine surveyor, examined the ALASKAN GRANDEUR, on behalf of Alaska Legacy, and concluded that some of the work done by plaintiff in late 2021-early 2022 had been defective and incomplete.[55] Reisner opines that plaintiff had "no well-developed project schedule for the yard period and that "[t]he lack of a well-developed and effective project schedule was a contributing factor to the vessel being re-delivered with the deficiencies and defects" that Reisner found during his examination.[56] Reisner opines that it would cost $211,560 to correct all

---

[53]Docket No. 23.

[54]Order re Motion for Requiring Counter-Security at 3, Docket No. 51.

[55]Exhibit D, Zach Decker Declaration, Docket No. 55. Plaintiff argues that Reisner's opinions are inadmissible because defendants have offered Reisner's reports which are unsworn hearsay. But, "[f]or a motion for summary judgment, 'a party does not necessarily have to produce evidence in a form that would be admissible at trial.'" Sywula v. Teleport Mobility, Inc., --- F.Supp.3d ---, 2023 WL 362504, at *22 (S.D. Cal. 2023) (quoting Block v. City of Los Angeles, 253 F.3d 410, 418–19 (9th Cir. 2001)). Because Reisner's opinions could be admissible at trial if he were called to testify, the court may consider his opinions to the extent that they are relevant to the issues raised in the instant motions. Plaintiff also argues that Reisner's opinion is inadmissible because "an expert may not opine on the meaning and import of disputed terms" in a contract. United States ex rel. Midstate Equipment, Inc. v. Ahtna Construction & Primary Products, LLC, Case No. 4:19-cv-00010-JWS, 2020 WL 7050170, at *3 (D. Alaska Nov. 23, 2020). However, the Reisner opinions that defendants have cited to do not involve his opinion as to the interpretation of the parties' contract.

[56]Statement of Opinions, Exhibit B at 2, Zach Decker Declaration, Docket No. 55.

ORDER – Motion for Summary Judgment;
Motion for Partial Summary Judgment - 9 -

the deficiencies.[57]  Reisner also opines that "[r]eview and analysis of [plaintiff's] Work Orders, Daily Captain's Report documents, and [plaintiff's] project invoices indicate [plaintiff] invoiced $185,029.54 without approved Work Orders and without approved Charge Orders."[58]

Plaintiff now moves for summary judgment on its third claim for relief against Glacier Guides; and defendants move for partial summary judgment "that the limited warranty term in the contract between Glacier Guides and [plaintiff] is unenforceable."[59]

Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The initial burden is on the moving party to show that there is an absence of genuine issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor.  Id. at 255.  "'[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence.'"  Arandell Corp. v. Centerpoint Energy Services, Inc., 900 F.3d 623, 628–29 (9th Cir. 2018) (quoting T.W. Elec. Service,

---

[57]Exhibit E at 13, Zach Decker Declaration, Docket No. 55.

[58]Statement of Opinions, Exhibit B at 3, Zach Decker Declaration, Docket No. 55.

[59]Defendant Glacier Guides, Inc.'s Motion for Partial Summary Judgment at 2, Docket No. 56.

Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987)). "'[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them.'" Tulalip Tribes of Washington v. Wash., 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two, 249 F.3d 1132, 1134 (9th Cir. 2001)). "Each motion must be considered on its own merits." Fair Housing Council of Riverside Cnty., Inc., 249 F.3d at 1136.

Plaintiff's Motion for Summary Judgment against Glacier Guides

Plaintiff is seeking to enforce Glacier Guides' dishonored check pursuant to RCW 62A.3-515. This statute "provides the mechanism by which a creditor may recover when a check accepted by the creditor is dishonored by reason of insufficient funds, stop payment orders, and other reasons." Northwest Motors, Ltd. v. James, 788 P.2d 584, 587 (Wash Ct. App. 1990). Glacier Guides does not dispute that Washington law applies to Glacier Guides' dishonored check, even though the underlying vessel repair contract sounds in admiralty.

Section 62A.3-515(a) provides that

> [i]f a check as defined in RCW 62A.3-104 is dishonored by nonacceptance or nonpayment, the payee or person entitled to enforce the check under RCW 62A.3-301 may collect a reasonable handling fee for each instrument. If the check is not paid within fifteen days and after the person entitled to enforce the check or the person's agent sends a notice of dishonor as provided by RCW 62A.3-520 to the drawer at the drawer's last known address, and if the instrument does not provide for the payment of interest or collection costs and attorneys' fees, the drawer of the instrument is liable for payment of interest at the rate of twelve percent per annum from the date of dishonor, and cost of collection not to exceed forty dollars or the face amount of the check, whichever is less, payable to the person entitled to enforce the check. In addi-

> tion, in the event of court action on the check, the court, after notice and the expiration of the fifteen days, shall award reasonable attorneys' fees, and three times the face amount of the check or three hundred dollars, whichever is less, as part of the damages payable to the person enforcing the check. This section does not apply to an instrument that is dishonored by reason of a justifiable stop payment order.

Plaintiff argues that pursuant to Section 62A.3-515(a), "a party who issues a check which it intends to dishonor is responsible for the full amount of the check, without deduction, plus attorneys' fees and interest."[60] Thus, plaintiff argues that Glacier Guides is liable for the amount of the dishonored check, which was $168,011.18, plus attorneys' fees and interest.

It is undisputed that Glacier Guides issued and delivered to plaintiff its Check No. 757 in the amount of $168,011.18. It is also undisputed that that check was dishonored by means of a stop payment order which the Deckers communicated to the drawee bank. Clearly, Glacier Guides' Check No. 757 was dishonored by non-acceptance or non-payment; but, as set out in full above, RCW 62A.3-515(a) "does not apply to an instrument that is dishonored by reason of a justifiable stop payment order. Justification may be shown by proof on behalf of Glacier Guides that it does not owe the amount of Check No. 757. See Toyota of Puyallup, Inc. v. Tracy, 818 P.2d 1122, 1125-26 (Wash. Ct. App. 1991). But the question of justification for the dishonor of Check No. 757 is not argued by plaintiff. Rather, plaintiff bases its motion for summary judgment on the contention that the above detailed facts establish an accord and satisfaction: an agreement between the parties that plaintiff's entire, discounted invoice was due from Glacier Guides to plaintiff.

---

[60]Motion for Summary Judgment against Glacier Guides, Inc. at 9, Docket No. 48.

ORDER – Motion for Summary Judgment;
Motion for Partial Summary Judgment                                                          - 12 -

Based upon <u>Northwest Motors, Ltd. v. James</u>, 822 P.2d 280 (Wash. 1992), plaintiff argues that there was an accord and satisfaction because James did not object to the invoice which he paid with a check that was later dishonored by a stop payment order. The Washington court found that James was "precluded from disputing the validity of the $3,596.42 charge represented by the check he wrote to pay it. Thus the court concluded that James was liable for the amount of the dishonored check, plus attorney fees. Similarly, plaintiff argues here that there has been an accord and satisfaction, making Glacier Guides liable for the amount of the dishonored check plus attorney fees and interest.

"[T]he elements of a satisfaction and accord are: (1) a bona fide dispute, (2) an agreement to settle that dispute, and (3) performance of the agreement." <u>St. John Medical Center v. State ex rel. Dept. of Social and Health Services</u>, 38 P.3d 383, 393 (Wash. Ct. App. 2002). "Accord and satisfaction depends upon 'a meeting of the minds' leading to 'an intention by both parties to satisfy ... prior obligation[s] by performance of the new.'" <u>Milgard Tempering, Inc. v. Selas Corp. of Amer.</u>, 761 F.2d 553, 557 (9th Cir. 1985) (quoting <u>Plywood Marketing Assoc. v. Astoria Plywood Corp.</u>, 558 P.2d 283, 289 (Wash. Ct. App. 1976)). "'The key element of accord and satisfaction is the intention of the parties, which as a rule presents a question of fact.'" <u>Id.</u> (quoting <u>Black v. Denver United States Nat'l Bank</u>, 362 F.2d 38, 41 (8th Cir.)).

Plaintiff argues that it is undisputed that there was (1) a bona fide dispute between it and Glacier Guides over the amount plaintiff had charged for its work on the ALASKAN GRANDEUR, (2) an agreement to settle that dispute in the form of a $15,000 reduction, and (3) performance by Glacier Guides when Alisha Decker issued two checks for the agreed upon amount even though Glacier Guides intended to stop payment on one of the checks. Thus, plaintiff argues that it is entitled to summary judgment that Glacier

Guides owes it $168,011.18, as well as its attorney's fees incurred in recovering this amount.

Defendants argue that there is at least a question of fact as to whether there was the requisite meeting of the minds in order for there to be a binding accord and satisfaction. Plaintiff repeatedly states in its briefing that Glacier Guides issued the two checks "without protest." But, defendants argue that the facts show that the Deckers did protest paying the final bill and that they only paid the final bill in order to take redelivery of the vessel so they could head to Alaska to honor their guide contracts.

Beyond any doubt, the above factual statement demonstrates that there was a bona fide dispute between plaintiff and Glacier Guides as regards the amount owned plaintiff for work performed by plaintiff on the ALASKAN GRANDEUR. If there were an agreement to settle the dispute between the parties, then plainly Glacier Guides' stop payment order constituted a non-performance breach of the agreement. The critical issue here is whether or not there was an agreement to settle the parties' dispute; and, as to that issue, the court finds that plaintiff is not entitled to summary judgment.

As set out above, on motion for summary judgment, the court views the evidence of the non-moving party in the light most favorable to that party. Moreover, the court draws justifiable inferences in favor of the non-moving party.

On the facts before the court, there was no agreement to settle the disputed account. Plaintiff wanted its discounted invoice paid in full before the ALASKAN GRANDEUR was released to defendants. Glacier Guides was motivated by contractual obligations which it was in danger of losing if the ALASKAN GRANDEUR was not on its way back to Alaska on April 4, 2022. Glacier Guides therefore released to plaintiff

Check No. 757 with the intent to dishonor it. There was no meeting of minds with respect to an accord and satisfaction.

Defendants argue that plaintiff is not entitled to summary judgment because plaintiff did not act in good faith. The court having concluded that plaintiff is not entitled to summary judgment on plaintiff's third cause of action, the court need not reach defendants' bad faith argument. Moreover, that argument is intertwined with the question of whether or not plaintiff has overcharged the defendants for work performed on the ALASKAN GRANDEUR.

Defendants' Motion for Partial Summary Judgment

Defendants move for summary judgment "(1) that the limited warranty contained in [plaintiff's] Terms and Conditions is invalid and unenforceable under the general maritime law of the United States; (2) that the limited warranty fails of its essential purpose under Washington's Commercial Code; and (3) that the consequential damages waiver is unenforceable."[61]

As an initial matter, plaintiff argues that if it prevails on its motion for summary judgment against Glacier Guides, then defendants' motion for partial summary judgment must fail because "'after accord and satisfaction, one may not raise ... any defense on the merits to the items which were originally in dispute.'" Northwest Motors, 822 P.2d at 285 (quoting Hotel Randolph Co., 257 P. at 630). "The validity of the agreement does not depend on the validity of the antecedent claim." Id. (citation omitted). Thus, if there were an accord and satisfaction, which plaintiff argues there was and defendants insist

---

[61]Defendant Glacier Guides, Inc.'s Motion for Partial Summary Judgment at 10, Docket No. 56.

there was not, then defendants' arguments regarding the validity of the warranty provisions in the parties' original contract are moot.

Because plaintiff's motion for summary judgment has been denied, the court will take up defendants' motion for partial summary judgment.

"Parties to a contract for the repair of a vessel may validly agree to limit the repairer's liability." Diesel "Repower", Inc. v. Islander Investments Ltd., 271 F.3d 1318, 1324 (11th Cir. 2001). In the Ninth Circuit, "[a]bsent evidence of overreaching, exculpatory clauses in ship repair contracts are enforceable...." Morton v. Zidell Explorations, Inc., 695 F.2d 347, 348 (9th Cir. 1982).

Defendants first argue that the limited warranty is unenforceable because it did not deter negligence. This argument is based on Diesel "Repower", Inc., an Eleventh Circuit case, in which the court held that in order for a limited liability clause to be enforceable, "the limitation must not absolve the repairer of all liability and must still provide a deterrent to negligence." Diesel "Repower", Inc., 271 F.3d at 1324. Defendants argue that the limited warranty does not deter negligence, but rather that Section 12(C) attempted to disclaim negligence actions entirely, in that it provided that "in no event shall [plaintiff] be liable to Customer for work performed on any other basis or under any other theory, including, but not limited to, actions based on negligence or strict liability[.]"[62] Defendants point out that they are claiming damages in the amount of $224,810 on their counterclaim, which is more than double the $100,000 liability cap in the parties' original contract. Defendants argue that having a liability cap that is so much lower than the damages that plaintiff might incur encourages negligence, rather than deters it. Defendants

---

[62]Exhibit 3, Zach Decker Deposition, Exhibit B at 16; McLean Declaration, Docket No. 49.

argue that whenever it will cost plaintiff more than $100,000 to repair poor quality or deficient work, plaintiff will be encouraged to refuse to do the repairs, force the customer to sue, and then seek to enforce the $100,000 cap.

But, the Ninth Circuit has held that, "except in towing contracts, exculpatory clauses are enforceable even when they completely absolve parties from liability for negligence[.]" <u>Royal Ins. Co. of America v. Southwest Marine</u>, 194 F.3d 1009, 1014 (9th Cir. 1999); <u>see</u> <u>also</u>, <u>M/V American Queen v. San Diego Marine Const. Corp.</u>, 708 F.2d 1483, 1488 (9th Cir. 1983) ("it is well settled that in admiralty law, the parties to a repair contract may validly stipulate that the shipowner is to assume all liability for all damage occasioned by the negligence of the shipyard"). Thus, even if the limited warranty attempted to absolve plaintiff from liability for negligence, the limited warranty would be enforceable, as long as there is no evidence of overreaching.

Defendants argue that there is evidence of overreaching. As set out above, Zach Decker avers that he had no opportunity to object to or negotiate any of the terms of the contract but rather that the contract was offered to him on a "take it or leave it" basis. As further evidence of overreaching on plaintiff's part, defendants point out that Glacier Guides had no choice but to take the ALASKAN GRANDEUR to plaintiff because warranty work was being performed as a result of defective work previously done by plaintiff.

Plaintiff offers no argument in response to defendants' overreaching argument.

The Ninth Circuit has "refused to invalidate an exculpatory provision in a ship repair contract where the ship's owner 'assented without complaint to the terms of the agreement.'" <u>Royal Ins. Co. of Amer.</u>, 194 F.3d at 1014 (quoting <u>M/V American Queen</u>, 708 F.2d at 1488). Here, Zach Decker assented without complaint to the terms of the

original contract, and given that plaintiff had been servicing the ALASKAN GRANDEUR since 2005, would have been aware of the terms and conditions in the form contract used by plaintiff. Defendants have not met their initial burden of showing that there are no genuine issues of material fact as to overreaching.

In the alternative, defendants argue that under UCC principles, the limited warranty is unenforceable because it fails of its essential purpose. "'In maritime commercial transactions, the Uniform Commercial Code [UCC] is taken as indicative of the federal common law of admiralty.'" Trans-Tec Asia v. M/V HARMONY CONTAINER, 435 F.Supp.2d 1015, 1023 (C.D. Cal. 2005) (quoting Interpool Ltd. v. Char Yigh Marine (Panama) S.A., 890 F.2d 1453, 1459 (9th Cir.1989)). RCW 62A.2-719 provides that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Title." "When a limitation of remedy clause deprives a party of the substantive value of its bargain, it is ineffectual" and fails of its essential purpose. Cox v. Lewiston Grain Growers, Inc., 936 P.2d 1191, 1198 (Wash. Ct. App. 1997). "[A]n exclusive limited remedy fails of its essential purpose when there are unreasonable delays in providing the remedy or the party required to provide the remedy is unable to do so." Amer. Nursery Products, Inc. v. Indian Wells Orchards, 797 P.2d 477, 484 (Wash. 1990).

Defendants argue that the limited warranty has failed of its essential purpose because plaintiff has refused to correct any of the defective and/or deficient work done on the ALASKAN GRANDEUR. In support, defendants offer the declaration of Drew Duggan, one of defendants' lawyers, who avers that "[w]hen counsel for Glacier Guides tendered the many deficiencies in [plaintiff's] workmanship identified by marine surveyor Ronald Reisner, [plaintiff] simply refused to acknowledge the tender or perform any

ORDER – Motion for Summary Judgment;
Motion for Partial Summary Judgment                                              - 18 -

repairs or replacements of their deficient workmanship."[63]  Thus, defendants argue that the limited warranty is unenforceable and that Glacier Guides should be allowed to pursue its breach of contract/warranty claim for the full amount of damages it has sustained.

Plaintiff argues that Glacier Guides cannot pursue a breach of contract/warranty claim against it because Glacier Guides "is guilty of anticipatory breach."[64]  "[A]n anticipatory breach is a 'positive statement or action by the promisor indicating distinctly and unequivocally that he either will not or cannot substantially perform any of his contractual obligations.'"  <u>Wallace Real Estate Inv., Inc. v. Groves</u>, 881 P.2d 1010, 1019 (Wash. 1994) (quoting <u>Olsen Media v. Energy Sciences, Inc.</u>, 648 P.2d 493, 497 (Wash. Ct. App. 1982)).  Plaintiff argues that Glacier Guides had a duty to pay plaintiff under either the original contract or the enforceable accord and satisfaction and that by dishonoring the check, Glacier Guides signaled that it was not going to perform.  Plaintiff argues that it was relieved of any of its duties under the parties' agreement because of Glacier Guides' anticipatory breach, which means that it has no duty to perform warranty work.

Defendants argue that Glacier Guides did not anticipatorily breach the original contract, in large part because defendants contend that Glacier Guides did not flatly refuse to pay plaintiff.  Rather, defendants contend that Glacier Guides only declined to pay the disputed amount, which means that Glacier Guides substantially performed its contractual obligation to pay.

---

[63]Declaration of Drew F. Duggan [etc.] at 2, ¶ 2, Docket No. 54.

[64]Opposition to Glacier Guides, Inc.'s Motion for Summary Judgment at 4, Docket No. 58.

ORDER – Motion for Summary Judgment;
Motion for Partial Summary Judgment                                                - 19 -

The anticipatory breach argument is not really responsive to defendants' argument that the limited warranty is unenforceable because it failed of its essential purpose. But, to the extent that it matters, there was not an anticipatory breach here.

Plaintiff also argues that Glacier Guides cannot pursue a claim for breach of contract/warranty because Glacier Guides has waived the warranty provision because the defects of which it complains were "open and obvious." As set out above, Section 12(B) of the parties' contract provided that "in no event shall Platypus be liable with respect to and Customer specifically waives ... any defect in workmanship or materials that was open and evident and/or could have been discovered during the course of work or at the time of redelivery[.]"[65] Reisner has testified that the Deckers gave him a "punch list" of sorts in which they had identified issues with plaintiff's work,[66] which plaintiff contends implies that these alleged defects or deficiencies were open and obvious. In addition, Reisner testified that a number of the items on the list were open and obvious to him.[67]

In reply, defendants contend that plaintiff's open and obvious argument is irrelevant because if the limited warranty is unenforceable as they argue, then it does not matter if the alleged defects were open and obvious. In addition, defendants dispute that the defects were open and obvious and point out that they gave the punch list to Reisner four months after redelivery, which was after they had a sufficient amount of time to inspect the vessel and discover the defects.

---

[65]Exhibit 3, Zach Decker Deposition, Exhibit B at 17, McLean Declaration, Docket No. 49.

[66]Deposition of Ron Reisner at 32:3-9, Exhibit A, Declaration of Donald K. McLean [etc.], Docket No. 59.

[67]Id. at 34:12-19; 37:9-18; 40:17-41:15; 54:3-25; 88:24-89:2.

ORDER – Motion for Summary Judgment;
Motion for Partial Summary Judgment                                                          - 20 -

Plaintiff's waiver argument is not responsive to defendants' argument that the limited warranty failed of its essential purpose. But, to the extent that it matters, there are questions of fact as to whether the limited warranty was waived due to open and obvious defects.

As for the question of whether the limited warranty failed of its essential purpose, plaintiff argues that it did not, primarily because it has not said that it would not stand by its warranty. In support of this argument, plaintiff offers the declaration of Feffer, in which he avers that "Platypus is willing to repair items for which it bears responsibility once Glacier Guides h[ad] paid the amount owing under our agreement.... Once paid, the vessel should be returned to Platypus" and plaintiff "will develop a repair plan in accordance with the items for which Platypus is responsible. Until such time as the amounts are paid, Platypus does not believe it has to respond to any warranty request."[68]

Plaintiff also argues that the limited warranty could not be found to have failed of its essential purpose because it provides for $100,000 in damages. If plaintiff failed to repair/replace/cure any defects, Glacier Guides would not be left with nothing, but would be entitled to $100,000 in damages. See Offshore-Inland Services of Ala., Inc. v. R/V DEEPOCEAN QUEST, Case Nos. C06-0183-JCC, C06-1114-JCC, 2007 WL 2908584, at *6 (W.D. Wash. Oct. 2, 2007) (although damages were limited to $50,000, because plaintiff could recover some damages for breach of warranty, "the warranty did not fail of its essential purpose").

The limited warranty has not failed of its essential purpose, primarily because defendants could still recover $100,000 in damages even if there was defective work that plaintiff did not repair.

---

[68]Declaration of Chris Feffer (dated Aug. 1, 2023) at 5, ¶ 6, Docket No. 60.

ORDER – Motion for Summary Judgment;
Motion for Partial Summary Judgment                                          - 21 -

Finally, defendants argue that the consequential damages limitation in Section 15 of the parties' original contract should "be expunged" because the limited warranty fails of its essential purpose. Business Office, Inc. v. Rapid Payroll, Inc., Case No. CV 03-1291 DT (PJWx), 2004 WL 7338700, at *6 (C.D. Cal. Oct. 14, 2004). Courts have held that when the failure of a limited warranty is total and fundamental, the consequential damages limitation is invalid. Id. at *6-7. As discussed above, defendants argue that the limited warranty failed of its essential purpose and they contend that this failure was total and fundamental to the parties' agreement.

Plaintiff disputes that any breach of warranty could be considered total and fundamental since the alleged defects and deficiencies did not prevent the ALASKAN GRANDEUR from operating.

The limited warranty has not failed of its essential purpose. The consequential damages limitation is not expunged.

Conclusion

Plaintiff's motion for summary judgment on its third cause of action against Glacier Guides is denied. Defendants' motion for partial summary judgment is denied.

DATED at Anchorage, Alaska, this  29th  day of November, 2023.

/s/ H. Russel Holland
United States District Judge