Donald K. McLean, AKSB No. 0403006
BAUER MOYNIHAN & JOHNSON LLP
2101 4th Avenue - 24th Floor
Seattle, WA 98121
Telephone: (206) 443-3400
Facsimile: (206) 448-9076
Email: dkmclean@bmjlaw.com

Attorneys for Plaintiff Platypus Marine, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| PLATYPUS MARINE, INC., a Washington Corporation,<br><br>Plaintiff,<br><br>v.<br><br>GLACIER GUIDES, INC.; an Alaska Corporation, *in personam*, ALASKA LEGACY, LLC, *in personam;* M/Y ALASKAN GRANDEUR, O.N. 1121333, her engines, tackles, hull, machinery, and gear*, in rem*<br><br>Defendants. | Case No. 1:22-cv-00006-APG |

## **PLATYPUS MARINE, INC.'S TRIAL BRIEF**

This case arises from work that defendant Glacier Guides, Inc. requested Plaintiff Platypus Marine, Inc. perform on the vessel ALASKA GRANDEUR on a time-and-materials basis. Upon completion, Glacier disputed Platypus' final bill of $292,253.74. Following a meeting to resolve the dispute, Platypus offered a $15,000 discount, reducing the bill to $272,253.74. Glacier accepted this offer by issuing two checks in the exact amount of the adjusted invoice. However, Glacier subsequently stopped payment on the larger check for $168,011.18.

Platypus's principal claim is a request for relief under RCW 62A.3-515 for the amount of dishonored check, plus statutory penalties and attorneys' fees. Glacier's defenses, based on alleged workmanship deficiencies, are precluded by the doctrine of accord and satisfaction, the parties' contract, and other various legal doctrines explained more fully below. Glacier's

TRIAL BRIEF
Case No. 1:22-cv-00006-APG
Page **1** of **19**

counterclaims fail, because the contract limits Platypus' liability, precludes consequential damages, and requires Glacier to meet specific criteria to substantiate its warranty claims, which it cannot do. Accordingly, as discussed further below, Platypus is entitled to judgment in the amount of $168,011.18, plus statutory penalties and attorneys' fees.

## PROCEDURAL HISTORY

Platypus filed its complaint on April 12, 2022 [Docket No.1]. It filed a Second Amended Complaint on July 5, 2022 [Docket No. 18]. An answer and counter claim was filed by defendants, Glacier Guides, Inc. and Alaska Legacy, LLC (collectively "Glacier") on July 21, 2022. [Docket No. 23]. Platypus filed an answer to the counter claim on August 24, 2022 [Docket No. 25]. The parties later filed cross-motions for summary judgment. On November 28, 2023, the Court issued an order addressing the motions and identifying the issues remaining for trial. [Docket No. 74].

First, the Court held that RCW § 62A.3-515 applies to Glacier's decision to stop payment on the $168,011.18 check issued to Platypus.

Second, the Court found that a genuine issue of material fact precluded summary judgment in favor of Platypus on its claim of Accord and Satisfaction. The remaining issue regarding this claim is whether Glacier issuing two checks without protest creates an accord and satisfaction.

Third, the Court further held that the limitations of liability in the parties' contract are enforceable. Accordingly, Platypus either (a) has no liability for any defects under the limited warranty or (b) liability for Platypus' work is capped at $100,000, and, in any event, (c) Glacier is not entitled to recover consequential damages.

As a result of the rulings the following issues remain for trial:

- Did the parties reach an accord and satisfaction by Platypus offering a discount and Glacier paying the discounted amount owed? If the answer to this is yes then Platypus is entitled to judgment in the amount of the discounted invoice and its

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

attorneys' fees pursuant to RCW §62A.3-515.

- If the parties did not reach an accord and satisfaction, what is the amount owed on contract between Platypus and Glacier?
- If the amount owed is equal to the amount billed less discount, then Glacier did not reasonably stop payment on the check and Platypus is entitled to its attorneys' fees pursuant to RCW § 62A.3-515.
- Did Platypus breach the warranties contained in its contract with Glacier?
- If so, what is the damages resulting from the breach of warranty? If the breaches are in excess of $100,000 then Glacier's damages are capped at $100,000.

## FACTS

Platypus and Glacier have a significant ongoing business relationship, with Platypus providing regular vessel repair/renovation services to the ALASKAN GRANDEUR for a number of years.

On December 3, 2021, Glacier brought the ALASKAN GRADEUR to Platypus for servicing ahead of the upcoming charter season. Zach Decker, principal of Glacier, signed the Vessel Repair Terms and Conditions (the "contract") the same day.

The contract provides that all work on the vessel is to be done on a time and material basis. Relevant terms include the following:

> 2. PAYMENT TERMS: A. Price. Unless otherwise agreed in the Work Plan, all labor supplied by Platypus shall be invoiced with straight time, overtime, weekend, and holiday rates as set forth in the Schedule of Rates and Charges and all materials, parts and equipment ordered by Platypus, including all non-owned or leased equipment utilized, shall be invoiced at the price actually paid by Platypus plus twenty percent (20%).
>
> B. Payment. Unless otherwise agreed in the Work Plan, Platypus shall invoice Customer every week, with payment due fifteen (15) days from date of invoice and any remaining balance shall become due at redelivery of the Vessel to Customer. All payments shall be made to Platypus in US dollars without deduction or offset. Amounts due but not paid shall accrue interest at the rate of one percent (1%) per month from date due until paid in full. Notwithstanding anything to the contrary, all payments shall be made to Platypus before the Vessel is launched from the facility. A three percent (3%) convenience fee will be added

ATTORNEYS AT LAW

BAUER MOYNIHAN & JOHNSON LLP

2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121

(206) 443-3400
FAX (206) 448-9076

to invoices paid with credit cards. Standard methods of payment are checks and bank transfers/wires.

\* \* \*

4. ADDITIONAL WORK: Customer may at any time request additions to, deletions from, adjustments of, or other changes to the work description as set forth in the Work Description. Although these changes may be oral, Customer shall execute a written change order or otherwise agree by e-mail if requested by Platypus. All such change orders whether written or oral shall be performed on a time and materials basis as set forth above and shall be subject to the terms and conditions of this agreement.

Unless the parties agreed otherwise, all work performed by Platypus was to be done on a time and material basis.

Throughout its work on the boat, Platypus invoiced Glacier on a regular basis. The invoices contained color-coded "Captain's Reports" that further identified that work was being done on a time and material basis. These reports were sent to Glacier via Zach Decker and Alisha Decker (also an officer of Glacier) on a regular basis. Glacier reviewed the Captain's Reports as it received them.

Platypus' work on the ALASKAN GRANDEUR continued through March 2022. Glacier, via the Deckers, repeatedly asked Platypus and its subcontractors to perform additional work on the boat. Relying on the provision in the contract and Glacier's acceptance of the provided Captain's Reports, Platypus performed the work on a time and material basis and then submitted the invoices for payment. Prior to Platypus issuing its final invoice, Glacier never objected to any work identified as "Time and Materials" on the Captain's Report, nor did Glacier balk at paying any of Platypus' invoices.

Supply chain issues occurring in the after effect of COVID pandemic caused several delays in the project. For example, Platypus struggled to obtain paint supplies despite placing orders well ahead of expected delivery.

As the project was coming close to completion, Glacier and the Deckers demanded that Platypus' work be completed by April 4 and requested that Platypus put as many workers on the project as necessary to complete it. Platypus acceded to this demand and worked around the clock to meet Glacier's schedule. Nonetheless, the vessel was launched before all work was

TRIAL BRIEF
Case No. 1:22-cv-00006-APG
Page **4** of **19**

ATTORNEYS AT LAW

BAUER MOYNIHAN & JOHNSON LLP

2101 FOURTH AVENUE SUITE 2400 SEATTLE, WA 98121

(206) 443-3400 FAX (206) 448-9076

complete, such as reinstalling certain hardware and completing the final clean up.

When the vessel was close to being complete Chris Feffer inspected the vessel with the Deckers to review the work performed and to determine what would be necessary to complete later. The Deckers did not point out any areas of concern with the work performed by Platypus and accepted the vessel as delivered.

On March 31, 2022, Platypus issued its final bill to Glacier. For the first time, Glacier indicated dissatisfaction with Platypus' billing process and insisted on discussing the final bill with Platypus. Nevertheless, they did not express any dissatisfaction with the quality of the work that Platypus performed.

On April 4, 2022, Platypus' President, Chris Feffer, and Platypus' Project Manager, Nick Burgett, met with Glacier regarding outstanding amounts due for Platypus' work. Glacier expressed concern at the amount it owed Platypus and stated as much at the April 4 meeting. Accordingly, Platypus agreed to deduct $15,000 from the cost of the work done and issued a credit memo. Following the credit of a $5,000 downpayment from Glacier, the total amount Glacier then owed Platypus was $272,253.74. The accumulated balance for Platypus' work on the vessel through March 2022, prior to the $15,000 credit, was $292,253.74.

In response to Platypus' $15,000 credit, Zach Decker and Nick Burgett had the following exchange via text on April 4:

| | | |
|---|---|---|
| Nick Burgett: | | You should see our updated statement with the discount applied any minute. |
| Zach Decker: | | We are on r way over that won't work |
| Nick Burgett: | | We are currently at lunch. |
| Zach Decker: | | Ok how long? |
| Nick Burgett: | | 12:30 for me. |
| Zach Decker: | | I guess you can come pick up the check. |
| Nick Burgett: | | I am at another boat I will be there in 10. |

Moments after writing "that won't work," Mr. Decker stated to Mr. Burgett that Platypus could "come pick up the check."

TRIAL BRIEF
Case No. 1:22-cv-00006-APG
Page **5** of **19**

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

Subsequently, Mr. Burgett picked up two checks issued by Glacier to cover the amount owed on Platypus' invoice. Check No. 756 was written for $104,242.56. Check No. 757 was written for $168,011.18. The total amount of the two checks matched the balance of the Platypus invoice following the $15,000 credit: $272,253.74. The checks also referenced the invoice Platypus had credited, "AGR003-16". At the time it issued payment, Glacier made no mention that it was paying under protest or would further contest Platypus' invoice.

When Nick Burgett initially opened the envelope for the checks, he only noticed one check. He subsequently called the Deckers who confirmed that they had written two checks to cover the balance owed on the invoice. Again, there was no comment that there were any problems with the work or amount billed.

When Platypus attempted to cash the checks, it discovered Glacier had put a stop payment order on the larger check, totaling $168,011.18.

On April 22, 2022, Platypus presented Glacier with a Notice of Dishonored Check, explaining Glacier's liability for interest, attorneys' fees, and a $300 penalty under RCW § 62A.3-515.

In sum, Platypus compromised the amount Glacier owed by $15,000. Glacier accepted the discount and then wrote Platypus two checks covering the amount owed. As explained more fully below, this created an enforceable accord and satisfaction. Platypus is entitled to judgment against Glacier under RCW § 62A.3-515.

## THE LAW

### A. FEDERAL MARITIME LAW GOVERNS THE PARTIES' CONTRACT

This case involves a dispute over a contract to repair a vessel. Contracts for repairs to a vessel come under the scope of admiralty jurisdiction. New Bedford Dry Dock Co. v. Purdy, 258 U.S. 96 (1922); La Esperanza De P.R. v. Perez Y Cia. De P.R., 124 F.3d 10, 16 (1st Cir. 1997).

"With admiralty jurisdiction comes the application of substantive admiralty law." E. River S.S. Corp. v. Transamerica Delaval, 476 U.S. 858, 864, 106 S. Ct. 2295, 90 L.Ed.2d 865

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

(1986).  "Absent a relevant statute, the general maritime law, as developed by the judiciary, applies."  Id. (citation omitted); Norfolk Southern Ry. V. James N. Kirby, Pty. Ltd., 543 U.S. 14, 23, 27, 125 S. Ct. 385, 160 L. Ed. 2d 283 (2004) (When a contract is a maritime contract and the dispute is not inherently local, federal law controls contract interpretation.).

"Basic principles in the common law of contracts readily apply in the maritime context." Clevo Co. v. Hecny Transp., Inc., 715 F.3d 1189, 1194 (9th Cir. 2013).  "In the Ninth Circuit, courts consider the foundational elements of contract law articulated in the Restatement (Second) of Contracts." Angelette, Ltd. Liab. Co. v. Bradley, 2023 U.S. Dist. LEXIS 94002, *9 (D. Alaska 2023) (citing Clevo, supra).  "In essence, '[m]aritime contracts must be construed like any other contracts: by their terms and consistent with the intent of the parties.'" Id. (quoting CITGO Asphalt Ref. Co. v. Frescati Shipping Co., 140 S. Ct. 1081, 1087, 206 L.Ed.2d 391 (2020)).  Courts, however, may use state law to supplement maritime matters, provided that the state law does not clearly conflict with federal maritime law.  Aqua-Marine Constructors, Inc. v. Banks, 110 F.3d 663, 667-68 (9th Cir. 1997).

B. **WASHINGTON LAW APPLIES TO THE DISHONORED CHECK**

Platypus seeks to enforce Glacier's dishonored check under Article 3 of Washington's version of the UCC, specifically RCW § 62A.3-515.  In the order on motion for summary judgement, the Court held the Washington law applied to this issue.

Although, as discussed above, the underlying repair contract between Platypus and defendants sounds in admiralty, the issue of the enforceability of private commercial paper—i.e., defendants' check—is determined by state law.  Shipping Corp. of India v. Jaldhi Overseas PTE Ltd., 585 F.3d 58, 71 (2d Cir. 2009) (New York law, rather than federal maritime law, applied to attachment of electronic fund transfer); 1 Benedict on Admiralty § 185, text supra n. 34 (2022) (citing THE PRESIDENT ARTHUR, 42 F.2d 288, 1930 AMC 1079 (S.D.N.Y. 1930), aff'd, 72 F.2d 276, 1934 AMC 1179 (2d Cir.), cert. den., 293 U.S. 615 (1934)) (admiralty jurisdiction does not extend to promissory notes); Dranson Pham v. Hong Van Nguyen, 2016 U.S. Dist. LEXIS

TRIAL BRIEF
Case No. 1:22-cv-00006-APG
Page **7** of **19**

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

86785, *18-19 (S.D. Miss. 2016) ("bad check claim" related to fishing vessel partnership agreement decided under Mississippi law). This Court has held that Washington law applies to this issue. See Dkt. 74, p. 11.

Washington's RCW §62A.3-515 provides as follows:

(a) If a check as defined in RCW 62A.3-104 is dishonored by nonacceptance or nonpayment, the payee or person entitled to enforce the check under RCW 62A.3-301 may collect a reasonable handling fee for each instrument. If the check is not paid within fifteen days and after the person entitled to enforce the check or the person's agent sends a notice of dishonor as provided by RCW 62A.3-520 to the drawer at the drawer's last known address, and if the instrument does not provide for the payment of interest or collection costs and attorneys' fees, the drawer of the instrument is liable for payment of interest at the rate of twelve percent per annum from the date of dishonor, and cost of collection not to exceed forty dollars or the face amount of the check, whichever is less, payable to the person entitled to enforce the check. In addition, in the event of court action on the check, the court, after notice and the expiration of the fifteen days, shall award reasonable attorneys' fees, and three times the face amount of the check or three hundred dollars, whichever is less, as part of the damages payable to the person enforcing the check. This section does not apply to an instrument that is dishonored by reason of a justifiable stop payment order.

(b) (1) Subsequent to the commencement of an action on the check (subsection (a)) but prior to the hearing, the defendant may tender to the plaintiff as satisfaction of the claim, an amount of money equal to the face amount of the check, a reasonable handling fee, accrued interest, collection costs equal to the face amount of the check not to exceed forty dollars, and the incurred court costs, service costs, and statutory attorneys' fees.

(2) Nothing in this section precludes the right to commence action in a court under chapter 12.40 RCW for small claims.

Under Washington law, a party who issues a check which it intends to dishonor is responsible for the full amount of the check, without deduction, plus attorneys' fees and interest. The present case is directly on point with Nw. Motors v. James, 118 Wn.2d 294, 822 P.2d 280 (1992).

In Northwest Motors, defendant James took his car to plaintiff Northwest Motors for repairs. Id. at 295. The repairs were delayed and James believed that he was overcharged. Angry about delays in repairing his car and the amount of the bill, James issued a check which he intended to make a stop payment on in order to release the car. Id. at 297. The case proceeded to

TRIAL BRIEF
Case No. 1:22-cv-00006-APG
Page **8** of **19**

ATTORNEYS AT LAW
BAUER
MOYNIHAN &
JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

trial where the court found that James did not owe the full amount charged because the auto shop did not comply with the Auto Repair Act, RCW §§ 46.71, *et seq.*, which requires the owner to sign off on estimates before the work was done. The trial court found, therefore, that there was a justifiable basis to stop payment on the check. Id. at 298.

Both the Washington Court of Appeals and the Washington State Supreme Court disagreed and reversed the trial court. Rendering the ultimate decision, the Washington Supreme Court ruled that when the repair shop compromised the original amount of the invoice and James paid the invoice with a check, the parties reached an "accord and satisfaction," and James could not dispute the compromised amount was owing. Id. at 303-04. Accordingly, Northwest Motors was able to recover the amount owing under RCW § 62A.3-515, plus its attorneys' fees incurred in collecting the amount of the dishonored check. Id. at 305; see also Evans v. Columbia Int'l Corp., 3 Wn. App. 955, 957, 478 P.2d 785 (1970) (enforceable accord and satisfaction if "the amount due is disputed, the debtor tenders his check in full payment of the debt, and the creditor cashes the check").

### C. THE PARTIES REACHED AN ACCORD AND SATISFACTION

An accord and satisfaction occurs when parties enter into a new agreement that discharges obligations under a prior contract. Whether an accord and satisfaction has been reached depends on the formation of a substitute contract, which in turn requires offer and acceptance. See Restatement (Second) of Contracts § 281. In its Order on the parties' cross-motions for summary judgment, the Court held that a material issue of fact precluded summary judgment on whether there was a meeting of the minds sufficient to establish an accord and satisfaction. See Dkt. 74, p. 14.

Here, the undisputed evidence supports a finding that an accord and satisfaction was reached. Platypus offered to resolve the billing dispute by reducing its invoice by $15,000. Glacier accepted that offer when it issued checks totaling the discounted amount. The law does not require that Glacier subjectively intended to enter an accord and satisfaction; objective

TRIAL BRIEF
Case No. 1:22-cv-00006-APG
Page **9** of **19**

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

manifestations of assent control. See Multicare Med. Ctr. v. Dep't of Soc. & Health Servs., 114 Wash. 2d 572, 587, 790 P.2d 124 (1990) ("the unexpressed subjective intention of the parties is irrelevant; the mutual assent of the parties must be gleaned from their outward manifestations"); 1 Richard A. Lord, Williston on Contracts § 3:5 (4th ed. 2010) ("[R]eal but unexpressed intention is irrelevant.").

Platypus brings its claim under RCW § 62A.3-515, which provides a statutory remedy for enforcing a dishonored check. As stated, the facts here mirror those of Northwest Motors. As in Northwest Motors: (1) a dispute arose between the parties over the amount owed; (2) Glacier contended that it had been overcharged; (3) Platypus offered a reduction in the disputed amount; and (4) Glacier paid the reduced amount by issuing checks covering the amount owed. Thus, the undisputed record supports a finding that an accord and satisfaction was reached. Under the reasoning in Northwest Motors, enforcement of the dishonored checks is proper under RCW § 62A.3-515.

Glacier raises several irrelevant or incorrect arguments to avoid the finding of an accord and satisfaction. For instance, Glacier contends that the parties' prior disagreements over the amount owed negate the existence of an accord and satisfaction. But, this misstates the law. A preexisting dispute is not inconsistent with an accord and satisfaction—it is a prerequisite. As the Washington Supreme Court explained in Northwest Motors, an accord and satisfaction is "a compromise of a doubtful or disputed claim." 118 Wn.2d at 305. By definition, such a compromise presupposes a disagreement or uncertainty regarding the underlying obligation.

Additionally, merely "objecting" to a bill prior to issuing payment does not undermine an accord and satisfaction. Again, the facts of Northwest Motors are identical to those here. In Northwest Motors, plaintiff James objected to the bill he received from defendant Northwest Motors when he received it. Id. at 297. Specifically, "James asked for permission to pay one-half of the amount due then and the other half later, but [Northwest Motors] refused." Id. James also believed he had been overcharged and made over 20 phone calls to Northwest Motors to complain

TRIAL BRIEF
Case No. 1:22-cv-00006-APG
Page **10** of **19**

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

about its service.  Id.  The claim was unquestionably "doubtful [and] disputed."  Id. at 305.  However, James did not object to Northwest Motors' compromised invoice at the time James wrote his check: "When Petitioner James tendered the $3,596.42 check to Respondent Northwest, he did not protest the repair costs nor the amount stated on the invoice.  He did not express his intent to negotiate on the costs at a later time." Id. at 302-03 (emphasis added).  Thus, the Court found his silence at the time he tendered the dishonored check created the binding accord and satisfaction. Id. at 305.

There is zero daylight between the facts of Northwest Motors and the present case.  Indeed, every time there is an accord and satisfaction, there is an "objection" or disagreement—i.e., "a doubtful or disputed claim."  Id.  The compromise of the objected-to, disputed claim does not undermine an accord and satisfaction, it is the foundation for it.  Id.; see Evans, 3 Wn. App. at 957 (writing word "objection" on cashed check did not constitute a valid "protest"; implied accord and satisfaction found if "the amount due is disputed, the debtor tenders his check in full payment of the debt, and the creditor cashes the check"); Nat'l Credit Co. v. Casco Co., 173 Wn. 275, 280, 22 P.2d 670 (1933) ("Appellant's belief that its lessee should pay the installments due under the contract, and appellant's payment thereof rather than accept the challenge of a test in court to determine liability if payments were not made, does not constitute 'payment under protest.'"); See also, Padilla v. City of San Jose, 78 Cal. App. 5th 1073, 1077 (2022) ("Payment under protest means giving written notice to the entity imposing the charges, at the time payment is made, indicating the payor believes the charge is invalid and intends to seek a refund.").

Glacier raises additional spurious arguments.  Glacier also argues that it had to pay a disputed amount in order to obtain the vessel for its summer season and, therefore, paid under "duress" voiding any accord and satisfaction.  However, duress occurs when "a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative."  Restatement (Second) of Contracts § 175 (emphasis added).

TRIAL BRIEF
Case No. 1:22-cv-00006-APG
Page **11** of **19**

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

In the present case, Platypus had a valid possessory lien on the vessel due to the work performed. RCW § 60.10.010, et seq. Native Vill. of Naknek v. Jones Pac. Mar., LLC, 141 F. Supp. 3d 1157, 1160-62 (W.D. Wash. 2015). Platypus had a right to demand payment of its invoice to allow the vessel to be released. This is not an "improper threat." Restatement (Second) of Contracts § 175, cmt. 1 (threatening a lawsuit is not an improper threat); Kamerman v. Steinberg, 891 F.2d 424, 432 (2d Cir. 1989) (holding that a threat is not improper if it is legally permissible); Pleuss v. City of Seattle, 8 Wn. App. 133, 137, 504 P.2d 1191(1972) (holding that a "threat to exercise a legal right made in good faith is neither duress nor coercion in law").

Furthermore, duress is an affirmative defense on which the Glacier would have the burden of proof. It cannot satisfy this burden because it had/has sufficient funds to post security to avoid the arrest of the vessel. Glacier had a "reasonable alternative" to avoid the consequences of Platypus' possessory lien. Restatement (Second) of Contracts § 175.

What Glacier should have done was pay the entire amount of the original bill under protest, then exercise its legal rights, not issue a counterfeit check. By issuing checks to pay the adjusted bill, Glacier accepted Platypus' offer to compromise. Accordingly, there is an accord and satisfaction that operates a substitute contract that satisfies both parties' obligations under the original contract. Glacier cannot now relitigate the issue of the amount owed for the work at Platypus.[1]

### D. GLACIER OWES THE AMOUNT THAT PLATYPUS INVOICED

Even if there were no accord and satisfaction, the Court should still rule in Platypus' favor and award the amount invoiced plus statutory penalties and attorneys' fees under RCW § 62A.3-515. Under the terms of the contract between the parties, all work was done on a time and material basis unless there was a clear agreement to the contrary. All of the evidence indicates

---

[1] To be clear, an accord and satisfaction creates a "new agreement," and thus "the validity of the agreement does not depend on the validity of the antecedent claim." Nw. Motors, 118 Wn.2d at 305. "[O]ne may not raise… any defense on the merits to the items which were originally in dispute." Id. at 304. Thus, any ostensible defenses Glacier had vis-à-vis the original contract or Platypus' work covering same are immaterial.

TRIAL BRIEF
Case No. 1:22-cv-00006-APG
Page **12** of **19**

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

that Platypus only charged for work actually performed at the rates agreed.

Instead of paying what is owed under the terms of the contract, Glacier wishes to argue that Platypus did not receive written work order and, therefore, cannot charge for work done. This is not the law. As noted above, the parties' contract expressly permitted oral additions without a work order. Oral contracts are also enforceable under federal maritime law. Kossick v. United Fruit Co., 365 U.S. 731, 734 (1961); S/Y Paliador, LLC v. Platypus Marine, Inc., 750 F. Supp. 3d 1187, *20 n.9 (W.D. Wash. 2024). To the extent that that Glacier asked for work to be done, it must pay for that work.

To the extent Glacier argues that Platypus' work order is ambiguous and should be construed against Platypus, this argument must fail. The parties' course of conduct determines how ambiguous provisions should be understood between the parties. One Beacon Ins. Co. v. Crowley Marine Servs., 648 F.3d 258, 265 (5th Cir. 2011). Platypus billed Glacier on a weekly basis and provided Captain's Reports to Glacier. These Captain's reports clearly identified work was being done on a time and materials basis consistent with the express terms of the contract. Glacier paid these invoices without complaint. Glacier was familiar with these reports because they were provided to Glacier during prior servicing of the ALASKAN GRANDEUR. Any ambiguity must be construed in accordance with the parties' actions under the contract.

Furthermore, several of Glacier's billing complaints relate to items that were billed by Platypus and paid by Glacier well before the last bill. Glacier's alleged complaints are legally unenforceable. The law is clear. "[I]f a party in default under a contract is allowed to continue to perform, this precludes any right of the other party to rescind the contract or declare a material breach and refuse to further perform because of any known default that has already taken place." Offshore-Inland Servs. of Ala., Inc. v. R/V Deepocean Quest (ex Nadir), 2007 U.S. Dist. LEXIS 73534, *11 (W.D. Wash. 2007) (citing 14 S. Williston & R. Lord, A Treatise on the Law of Contracts § 40:1); Restatement (Second) of Contracts § 246 ("an obligor's acceptance or his retention for an unreasonable time of the obligee's performance, with knowledge of or reason to

TRIAL BRIEF
Case No. 1:22-cv-00006-APG
Page **13** of **19**

Case 1:22-cv-00006-APG   Document 139   Filed 06/09/25   Page 13 of 19

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

know of the non-occurrence of a condition of the obligor's duty, operates as a promise to perform in spite of that non-occurrence"). If Glacier was unwilling to pay for work performed by Platypus, Glacier had an obligation to object to Platypus' work. Instead, it allowed Platypus to continue to perform, continued to incur costs on a time and materials basis, and ultimately waited until redelivery to complain.

An example of the parties' course of dealing and Glacier's failure to object is the paint repairs. Glacier is complaining about $41,000 it believed was part of the paint bid. The Captain's Reports specifically identified the paint repairs as a separate service item. Glacier paid for those repairs on numerous occasions without issue. If it did not want the miscellaneous repairs to be done it had an obligation to inform Platypus and was (and is) not permitted to wait until the end of the project to complain about being billed for the work that was done.

Another similar example is installation of the "Main Salon TV." This work was done when the vessel first arrived in the yard at the request of Glacier. It was invoiced and paid. Glacier cannot now complain about the costs associated with the costs it paid without objection.

Even absent an accord and satisfaction, Glacier was obligated to pay Platypus the full amount of its final invoice. Accordingly, Glacier's dishonoring of its check was not reasonable, and Platypus is entitled to collect both the full amount of $168,011.18, plus statutory penalties and attorneys' fees under RCW § 62A.3-515.

E.   **PLATYPUS IS NOT RESPONSIBLE FOR PHANTOM COSTS**

In addition to its counterclaim that it was overcharged for the work, Glacier retained a surveyor who inspected the vessel based on a punch list provided by Glacier. Glacier argues that Platypus is liable for the costs of repairing each item on the list regardless of whether or not Platypus ever worked on the allegedly defective/damaged item.

Platypus sole liability under the contract is pursuant to its limited warranty which this Court (and the Western District of Washington in 2024) has found enforceable. Dkt. 74, pp. 21-22; Paliador, 750 F. Supp. 3d at 1200-03. The agreement of the parties, therefore, determines

TRIAL BRIEF
Case No. 1:22-cv-00006-APG
Page **14** of **19**

when and how Glacier can make a claim. The contract provides at Section 12:

> A. Warranty. Platypus warrants that its work shall precisely conform to that identified as the responsibility of Platypus in the Description and any amendment, that the same shall be free from defects and deficiencies, and that its workmanship shall otherwise be of good commercial quality for a period of one (1) year after the date and time of redelivery of the Vessel to Customer (referred to as the warranty period), subject to the following:
>
> (1). All non-conformities, defects, and deficiencies must be discovered and notified in writing to Platypus within the warranty period identified above.
> (2). Platypus shall have reasonable opportunity to inspect the Vessel and claimed non-conformity, defect, and/or deficiency in its condition as first discovered and before any repair has commenced, except in emergency circumstances.
> (3). Platypus shall have reasonable opportunity to repair/replace/cure the same. In such an event, Customer shall deliver the Vessel and/or defective work or materials, etc. to Platypus at Customer's expense, and Platypus shall repair/replace/ cure the same at its expense, time being of the essence. In the event of emergency circumstances requiring that the repair/replacement occur elsewhere and/or be performed by others, Platypus shall not be responsible for any costs exceeding those which would have been charged by Platypus had it performed the work itself at its facility.
> (4) Platypus does not warrant equipment, parts, coatings, and other materials that are provided with the work. All such equipment, parts, coatings, and other materials will fall under the warranty provided by the respective manufacturer.
> (5) All paint finishes are guaranteed one (1) year for gloss retention and adhesion. There will be no guarantee against blistering of coatings on wood that is not dry.
> (6) All other warranties whether express or implied are specifically disclaimed.
> (7) Platypus' maximum liability pursuant to the warranty set forth herein shall not exceed, in the aggregate, the lesser sum of $100,000 or the value of the work performed by Platypus under this Agreement.
> (8) Customer's sole remedy for damage to the vessel, whether sounding in contract or tort, shall be limited to this warranty.
> (9) Platypus' maximum liability to Customer for all causes of action, sounding in contract or tort, is $100,000, even if the damage was caused by the sole negligence or fault of Platypus
>
> B. Waivers. Notwithstanding the foregoing, in no event shall Platypus be liable with respect to and Customer specifically waives the following:
> (1) any defect in workmanship or materials that was open and evident and/or could have been discovered during the course of work or at the time of redelivery; and
> (2) any equipment, parts, materials, or workmanship, other than Platypus warranting its own workmanship associated with the installation of the same, as applicable.

The contact also has a provision related to Redelivery which provides:

> 11. REDELIVERY: Platypus shall tender the Vessel for redelivery after Platypus' work has been completed. Customer shall inspect the Vessel at such-time and/or at any required test and trials to determine whether the work of Platypus conforms

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

to that in the work description is as requested, or whether it is found to be nonconforming, defective, or deficient. Customer must inform Platypus in writing of any non-conformity, defect, or deficiency at the time of such inspection, and shall provide Platypus a reasonable opportunity to correct the same. Upon completion of such inspection and acceptance of any such corrections by Customer, the Vessel shall be redelivered to Customer.

Therefore, to prevail on its warranty claims, Glacier must prove three things for each condition:

1. That the work complained of was work performed by Platypus;
2. That the work complained of failed to meet good commercial quality;
3. The defective work was not open and evident and could not have been discovered during the course of work or at the time of redelivery.

For each condition complained about Glacier fails to satisfy one of the three elements.

Broadly speaking, Glacier complains about a number of items not worked on by Platypus; which were of acceptable commercial quality; and which were open and obvious and could have been discovered during the course of Platypus' work or at the time of redelivery. Glacier cannot recover for any of these items.

By way of more specific example, the single largest component of Glacier's claims deal with the repainting of the vessel and similar alleged cosmetic defects. On this one particular item, Platypus did perform the alleged paint work. Accordingly, Glacier clears element 1. However, Glacier expressly requested the quality of Platypus' paint work to be the same as what existed on the vessel at the time of contracting. It was. The paint was thus of "acceptable commercial quality." Therefore, these "paint claims" fail per element 2. Additionally, Glacier cannot claim for these supposed defects, because the condition of the paint (and other cosmetic components) were both open and obvious and could have been discovered during Platypus' work and at the time the ALASKAN GRANDEUR was redelivered to Glacier. All of Glacier's other claims fail for similar reasons.

As if not enough, and specifically with regard to these paint claims, the contractual warranty only extends to issues related to adhesion and gloss retention. There is no evidence that

TRIAL BRIEF
Case No. 1:22-cv-00006-APG
Page **16** of **19**

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

there was any issue with adhesion and gloss retention.

Furthermore and finally, the recoverable damage for a breach of warranty is the difference in value between the promised performance and actual performance. See, e.g., AS § 45.02.714 (b); RCW § 62A.2-714(b) (discussing goods; "difference… between the value of the goods accepted and the value they would have had if they had been as warranted"). In the present case, the vessel was painted and otherwise serviced per Glacier's specifications; the vessel is able to operate; and there is no need to further service or repair the vessel. Glacier has suffered no damages.

### F. GLACIER'S BREACH RELIEVES PLATYPUS OF ANY DUTY

Glacier argues that Platypus breached its obligation under its limited warranty, because Platypus did not repair and replace the ostensible deficiencies identified by Glacier. However, Glacier's refusal to pay Platypus operates as a material/anticipatory breach of the contract, relieving Platypus of any further duty to perform. The contract provides as follows at Section 12.C:

> **C. Remedies.** In the event Customer fails to make payment when due, Customer shall be in default under this agreement. In the event of such default, Platypus reserves all rights and remedies, may suspend work on the Vessel until all amounts due, including interest, have been received, and/or may, upon written notice to Customer, relocate the Vessel to any location within or outside of Platypus' yard at Customer's sole risk and expense and/or enforce a lien on the Vessel.

Platypus' right to "suspend work" is both written into the parties' contract and is basic "black letter" law under the doctrine of anticipatory breach.

> "An 'anticipatory breach' of a contract is one committed before the time when there is a present duty of performance and results from words or conduct indicating an intention to refuse performance in the future." 23 id. § 63:29. "It consists of an outright refusal by a party to perform a contract or its conditions, or at least of some manifestation by one party to the other that the first cannot or will not perform some of its obligations under the contract." 23 id. § 63:29.

F.W.F. Inc. v. Detroit Diesel Corp., 494 F. Supp. 2d 1342, 1360 (S.D. Fla. 2007), aff'd, 308 F. App'x 389 (11th Cir. 2009) (quoting 11 Richard A. Lord, Williston on Contracts, § 63:29 (4th Ed.

TRIAL BRIEF
Case No. 1:22-cv-00006-APG
Page **17** of **19**

ATTORNEYS AT LAW

BAUER MOYNIHAN & JOHNSON LLP

2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121

(206) 443-3400
FAX (206) 448-9076

2006)); Philps P.R. Core, Inc. v. Tradax Petroleum Ltd., 1984 U.S. Dist. LEXIS, *17 (S.D.N.Y 1984) ("An anticipatory breach or repudiation relieves the other party of all contract obligations."); Restatement (Second) of Contract, ¶ 253 ("Where performances are to be exchanged under an exchange of promises, one party's repudiation of a duty to render performance discharges the other party's remaining duties to render performance."); see also, Cent. States, Se. & Sw. Areas Pension Fund v. Basic Am. Indus., 252 F.3d 911, 915 (7th Cir. 2001) (discussing doctrine of anticipatory breach generally and analyzing Restatement; "One way is by repudiating the obligation to pay; anticipatory repudiation is a breach of contract that entitles the payee to sue without waiting for the date when payment was due to come and go.").

Simply put, Glacier could not (and cannot) enforce any obligation owed by Platypus under the contract until it pays the amount owing. Glacier's refusal to pay relieved Platypus of the duty to further perform under the contract.

### G. PLATYPUS HAS LIMITED ITS LIABILITY TO $100,000.

Furthermore and finally, the Court has held that, in all circumstances, Platypus has limited any potential liability to $100,000 per the parties' agreement. Dkt. 74, pp. 21-22. To the extent that Platypus could have any liability it is limited to this amount.

### CONCLUSION

This case is relatively straightforward. Platypus Marine and Glacier entered into a contract whereby Platypus preformed work on the ALASKAN GRANDEUR under the terms of the contract. Platypus then billed Glacier in accordance with the contract. Glacier was unhappy and protested the amount of the bill. In response to the complaints, Platypus offered Glacier a $15,000 discount. Glacier accepted this by paying the discounted amount. Glacier then stopped payment on one of the payment checks. The parties, thereby, reached an accord and satisfaction resolving all issues related to the vessel. When Glacier subsequently stopped payment on the check, it made itself liable for Platypus' attorneys' fees under RCW § 62A.3-515.

Although the accord and satisfaction prevents Glacier from relitigating the amount owed

ATTORNEYS AT LAW
BAUER MOYNIHAN & JOHNSON LLP
2101 FOURTH AVENUE
SUITE 2400
SEATTLE, WA 98121
(206) 443-3400
FAX (206) 448-9076

for the work performed at Platypus, the evidence will show that Platypus properly billed for its work in accordance with the parties' contract. Glacier did not have a valid reason for stopping payment on the check.

Finally, Glacier's warranty claims are not viable. Platypus' work was proper. Nevertheless, the ostensible defects identified by Glacier either were not items worked on by Platypus or were readily apparent during Platypus' work. In any event, Glacier refuses to pay its bill and thus cannot enforce the contract's warranties when Glacier is in material/anticipatory breach of the agreement.

The Court should enter judgment accordingly.

DATED this Monday, June 09, 2025.

BAUER MOYNIHAN & JOHNSON LLP

/s/ Donald K. McLean
Donald K. McLean, AKSB No. 0403006
Attorneys for Plaintiffs
Bauer Moynihan & Johnson LLP
2101 Fourth Avenue, Suite 2400
Seattle, Washington 98121
Telephone: (206) 443-3400
Fax: (206) 448-9076
Email: dkmclean@bmjlaw.com